IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>Defendants. | Case No.: 12-2158 JSC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE (Dkt. No. 4)** |

Plaintiffs' lawsuit seeks to overturn Defendants' Environmental Assessment and Finding of No Significant Impacts for eight water service contracts for the delivery of water to the Central Valley of California. Now pending before the Court is Defendants' 12(b)(3) Motion to Dismiss for Improper Venue pursuant to U.S.C. § 1406(a), or in the alternative, to Transfer Venue to the Eastern District of California pursuant to 28 U.S.C.A. § 1404(a).[1] Defendants contend that venue is improper in the Northern District because all relevant agency decisions took place in the Eastern District and the water that is the subject of the dispute is delivered to the Eastern District. Plaintiffs respond that venue is proper in the

---

[1] Pursuant to 28 U.S.C. § 636(c), parties consented to the jurisdiction of a United States magistrate judge. (Dkt. Nos. 6,7.)

1  Northern District because water is taken from the Northern District, where the key pumping
2  facility is located and environmental harm occurs in the Northern District.  After carefully
3  reviewing the parties' submissions, and having had the benefit of oral argument on August 2,
4  2012, the Court concludes that assuming venue is proper in the Northern District, the action
5  should nonetheless be transferred to the Eastern District of California pursuant to section
6  1404(a).

## ALLEGATIONS OF THE COMPLAINT

The Pacific Coast Federation of Fishermen's Association ("PCFFA") and San Francisco Crab Boat Owners Association (collectively "Plaintiffs") challenge the United States Bureau of Land Reclamation's ("Reclamation") and U.S. Department of the Interior's (collectively "Defendants") approval of eight water service contracts, referred to as the Three Delta Division and Five San Luis Unit Water Service Interim Renewal Contracts 2012-2014 ("interim contracts").  (Dkt. No. 1 ¶ 2.)

Plaintiffs allege that the Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") prepared by Defendant Reclamation to ascertain the environmental effects of the interim contracts violate the National Environmental Policy Act, 42 U.S.C. section 4321 *et seq.* ("NEPA").  (Dkt. No. 1 ¶ 2.)  In particular, the EA and FONSI violate NEPA because they assume that Defendant Reclamation has no discretion to (1) reject the interim contracts; (2) reduce the quantities of water exported from the San Francisco Bay/Sacramento River Delta ("Bay-Delta"); or (3) increase the interim contracts' pricing structure to reduce water demand and thus reduce exports and their environmental impacts. (Dkt. No. 1 ¶ 2.)  Since Defendants consider continued water delivery to be the environmental *baseline*, the EA and FONSI improperly conclude that water deliveries under the interim contracts will have *no effect on the environment*.  (Dkt. No. 1 ¶ 3.)  As a result of this assumption, Defendants have not considered any alternatives or mitigation measures to reduce the environmental impact of the interim contracts "on the Delta's increasingly imperiled salmon, steelhead, sturgeon and other fish and wildlife."  (Id.)  Plaintiffs also seek to compel Defendant Reclamation "to complete the long-overdue Environmental Impact Statement

1 ("EIS") for the long-term contracts between Reclamation and the West San Joaquin Division
2 and San Luis Unit contractors as required by the CVPIA." (Dkt. No. 1 ¶ 5.)

3       Plaintiff PCFFA contends that the Central Valley Project ("CVP") directly affects the
4 health and population of anadromous fishes, including salmon and steelhead, on which its
5 members rely for their sustainable harvests of ocean fish. (Dkt. No. 1 ¶ 12.) Plaintiff San
6 Francisco Crab Boat Owners Association also alleges injury due to reliance on a sustainable
7 harvest of crustaceans and fishes from the Pacific Ocean; its members operate small, family
8 owned fishing boats that catch Dungeness crab, wild California king salmon, herring, and
9 many other fish species that live in the Pacific Ocean. (Dkt. No. 1 ¶ 13.) According to
10 Plaintiffs, Defendants' environmental review ignores the environmental impacts its water
11 exports are having on the Delta's increasingly imperiled salmon, steelhead, sturgeon and other
12 fish and wildlife. (Dkt. No. 1 ¶ 3.) The failure to conduct a serious environmental impact
13 analysis for the CVP short term and long term water contracts puts these species at risk. (Dkt.
14 No. 1 ¶ 19.)

## PROCEDURAL HISTORY

16       Plaintiffs filed this action in this District on April 30, 2012 and make claims for
17 declaratory and injunctive relief. Defendants subsequently filed the pending Motion to
18 Dismiss for Lack of Venue or, in the alternative, to Transfer Venue to the Eastern District of
19 California. (Dkt. No. 4.) Defendants contend that venue is not proper in this District and,
20 even if it is, the case should be transferred pursuant to 28 U.S.C. § 1404(a) in the interests of
21 justice.

## LEGAL STANDARD

23       A civil action may be brought in "a judicial district in which a substantial part of the
24 events or omissions giving rise to the claim occurred, or a substantial part of property that is
25 the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Once the propriety of venue is
26 challenged pursuant to Rule 12(b)(3), the plaintiff bears the burden of proving that venue is
27 proper. Piedmont Label Co. v. Sun Garden Packing Co., 589 F.2d 491, 496 (9th Cir. 1979).
28 When considering a motion to dismiss for improper venue, a court need not accept the

3

pleadings as true and may consider facts outside of the pleadings. Doe 1 v. AOL, LLC, 552 F.3d 1077, 1081 (9th Cir. 2009). "[T]he court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." Ctr. For Food Safety v. Vilsack, No. 11-00831, 2011 WL 996343, at *2 (N.D. Cal. Mar. 17, 2011). If the court finds venue is improper, it has discretion to dismiss or to transfer venue to a proper court. Omnicell, Inc. v. Medacist Solutions Group, LLC, 272 F.R.D. 469, 473 (N.D. Cal. 2011) (internal citations omitted).

Even if a court finds that venue is proper, it has discretion to transfer a case to another district pursuant to 28 U.S.C. section 1404(a). That statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When a defendant moves for a 1404(a) transfer, the defendant bears the burden to show that transfer is appropriate. Commodity Futures Trading Commission v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).

## DISCUSSION

### A. Whether Venue is Proper in the Northern District

Plaintiffs first contend that venue is proper under 28 U.S.C. § 1391 because the CVP's Jones Plant is located in the Northern District, and the Plant harms plaintiffs by diverting Delta water south to CVPIA contractors. (Dkt. No. 1 ¶ 8.) Defendants acknowledge that the interim contracts bear a relationship to CVP facilities in the sense that the contracts address payment of operation and maintenance of the facilities and repayment of construction costs, but nothing more.

Plaintiffs also allege a connection to the Northern District in that "resultant drainage water from farms discharges pollutants…and thereby contaminates the Bay-Delta and its tributaries…It degrades water quality in the Bay-Delta and thereby exacerbates the threats to endangered and threatened fish species there, including the delta smelt, salmon, steelhead, and sturgeon." (Dkt. No. 1 ¶¶ 20.) Further, as Plaintiffs explained at oral argument, water is

1  diverted, in part, from the Northern District which harms the fish upon which Plaintiffs'
2  members rely for their livelihoods.  Defendants respond that the location of Plaintiffs' injury
3  in this District is irrelevant to the venue inquiry, but they cite no case to support their defense
4  and at least one court in this District has held that the standing/injury inquiry and venue
5  inquiry in an environmental case can be intertwined.  See Center for Food Safety v. Vilsack,
6  11-00831 JSW, 2011 WL 996343 *4 (March 17, 2011) (denying motion to dismiss for
7  improper venue because plaintiffs had standing based on geographic proximity to the
8  impacted environmental area).

9  The Court, however, need not finally resolve whether venue is proper here because for
10 the reasons explained below it finds that regardless of whether venue is proper or improper,
11 this case should be transferred to the Eastern District of California.

**B. Section 1404(a) Transfer**

In deciding whether to transfer a case pursuant to section 1404(a) "[t]he transferor court must first determine whether the action 'might have been brought' in the transferee court, and then the court must make an "individualized, case-by-case consideration of convenience and fairness."  Ctr. For Biological Diversity & Pac. Env't v. Kempthorne, No. 07-0894, 2007 WL 2023515 at *3 (N.D. Cal. July 12, 2007) (internal quotation marks and citations omitted).

**1. This Action Could Have Been Brought in the Eastern District**

With respect to the first prong of the analysis, it is undisputed that this case could have been brought in the Eastern District.  Over 99 percent of the contracted quantities of water are delivered in the Eastern District. (Dkt. No. 4 at 6.)  Further, the interim contracts were executed by officials at the U.S. Bureau of Reclamation's South-Central California Area Office in Fresno, CA and this office is part of the Mid Pacific Regional Office headquartered in Sacramento, CA, both which are located in the Eastern District. (Dkt. No. 4 at 4.) Therefore, a substantial part of the events that are the subject of the action took place in the Eastern District.  See 28 U.S.C. § 1391(b)(2).

//

### 2. Analysis of Relevant Factors

"A motion to transfer venue under §1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). In particular, the Court should consider (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to evidence; (5) familiarity of each forum with applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time to trial in each forum. Center for Biological Diversity and Pac. Env't, 2007 WL 2023515 at *3.

Typically the defendant must make a strong showing that transfer is appropriate to warrant upsetting the plaintiff's choice of forum. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) (internal citations omitted); see also Ctr. for Biological Diversity & Pac. Env't, 2007 WL 2023515 at *3 (stating that unless the balance of factors weighs heavily in favor of the defendants, "the plaintiff's choice of forum should rarely be disturbed") (internal citations omitted). However, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." Id. (internal quotation marks and citation omitted). "The degree to which courts defer to the plaintiff's venue choice is substantially reduced where the plaintiff's venue choice is not its residence or where the forum lacks a significant connection to the activities alleged in the complaint." Id. (internal quotation marks and citation omitted).

Here, Plaintiffs' choice of forum is entitled to deference. At least one of the plaintiffs, or its members, appears to reside in this District as it is called the "San Francisco" Crab Boat Owners Association, Inc. Further, Plaintiffs allege Defendants' conduct has harmed fish in this District leading to harm of Plaintiffs' members in this District. Thus, this is not a case in which the connection to the District is unrelated and remote. Compare with Center for Biological Diversity v. Rural Utilities Serv., No. 08-

1240, 2008 WL 2622868, at *1 (N.D. Cal. June 27, 2008) (granting transfer where no part of the plaintiff's claims arose in the Northern District of California).

The relative court congestion and time to trial in each forum is a neutral factor. The Northern District had 6,122 civil cases pending as of March 2011, and the Eastern District had 6,840 civil cases pending, with only half as many judges. (Dkt. No. 8 at 9-10; Dkt. No. 8-1 at 50.) Also, the Eastern District itself has noted that it "has the highest weighted filings per judgeship in the country." Hammond v. Wal-Mart Stores, Inc., No. 10–1788, 2011 WL 1668209, at *8 (E.D. Cal. May 2, 2011). However, notwithstanding the Eastern District's heavy caseload, median time intervals from filing to disposition of civil cases were 8 months in the Northern District and 7.9 months in the Eastern District for the 12 month period ending September 30, 2011. (Dkt. No. 9 at 7 n.5.) In other words, notwithstanding the heavier caseload (which in large part is the result of pro se prisoner filings), cases are disposed of in as timely a fashion in the Eastern District as the Northern District. Thus, this factor is neutral in the Court's analysis.

The convenience of the parties and witnesses and ease of access to evidence are also neutral factors because it is undisputed that the case will be decided on the administrative record. See Center for Biological Diversity v. Lubchenco, No. 09-4087, 2009 WL 4545169 at *3 (N.D. Cal. Nov. 30, 2009) (noting that convenience of parties and witnesses and access to evidence is irrelevant to a motion to transfer an administrative review environmental case). Plaintiffs nonetheless argue that the convenience of the parties weighs against transfer because "the case must be expeditiously litigated and the Eastern District's caseload is overwhelming." (Dkt. No. 8 at 9.) As discussed above, relative congestion and time to trial in each forum is a separate factor in the analysis and is neutral given the median time to disposition in both districts. The Court does not find that Plaintiffs will be inconvenienced in this manner by a transfer to the Eastern District.

Next, the Court considers the local interests involved in this controversy. Courts have considered local environmental, aesthetic, and economic impacts when analyzing this factor,

1  as well as the location of other operative facts, such as public hearings.  See Sierra Club v.
2  United States Dep't of State, 2009 WL 3112102, at *4 (N.D. Cal. Sept.23, 2009) (analyzing
3  local interests based on environmental, aesthetic, and economic impacts)*;* McCrary v.
4  Gutierrez, No. 06-0086, 2006 WL 1748410, at *3 (E.D .Cal. June 23, 2006) (granting transfer
5  to the Northern District of California because the species that was the subject matter of the
6  action, the alleged injury, and the formulation of the basis for the challenged decision
7  occurred in the Northern District).

8        The gravamen of the complaint it that "the EA and FONSI violate NEPA because they
9  assume that Defendant Reclamation has no discretion to (1) reject the interim contracts; (2)
10 reduce the quantities of water exported from the [Bay-Delta]; or (3) increase the interim
11 contracts' pricing structure to reduce water demand and thus reduce exports and their
12 environmental impacts."  (Dkt. No. 1 ¶ 2.)  Plaintiffs also seek to compel Defendant
13 Reclamation "to complete the long-overdue EIS for the long-term contracts between
14 Reclamation and the West San Joaquin Division and San Luis Unit contractors as required by
15 the CVPIA."  (Dkt. No. 1 ¶ 5.)  Therefore, the challenged conduct is Defendant Reclamation's
16 approval of the eight interim contracts, methodology for the NEPA analysis, and failure to
17 conduct an EIS for long-term contracts.  (Dkt. No. 1 ¶¶ 3-5.)  The relief Plaintiffs seek--
18 requiring further environmental review and, presumably, modification of the water contracts--
19 would have a major impact in the Eastern District.  Ninety-nine percent of the water under the
20 contracts is delivered to the Eastern District (specifically, the Central Valley) by diverting
21 water from the Delta to the Central Valley.  Accordingly, there is substantial local interest in
22 the controversy in the Eastern District.  See Sierra Club, 2009 WL 3112102 at *4 (granting
23 motion to transfer venue where the majority of the activities underlying the suit took place
24 within or very near the jurisdiction of the transferee district, and the rights and interests of the
25 citizens in transferee district would be directly affected by the outcome of the suit).  And, as is
26 discussed below, this local interest in the CVP has been ongoing for some time.  Further,
27 while Plaintiffs allege some harm in the Northern District due to the water contracts, and
28 consequent harm to Plaintiffs' members in the Northern District due to reduced fish

populations in the Pacific, they also specifically allege harm to the Central Valley environment: "Plaintiffs seek a speedy adjudication of this matter to address and reverse the accelerating decline of fish and wildlife caused by the water diversions authorized by the interim contracts and *to curtail the worsening contamination of ground and surface water resources in the Central Valley resulting from the harmful irrigation practices that these contracts perpetrate.*" (Dkt. No. 1 at ¶ 4 (emphasis added).)

Plaintiffs argue that local interests weigh against transfer because crucial facilities are located in the Northern District and environmental consequences are felt in the Northern District. (Dkt. No. 8. at 10.) Plaintiffs assert that the Jones Plant is central to the dispute because without this facility there would be no water diversions from the Delta to contractors. (Dkt. No. 8 at 5.) The Court is unpersuaded; the Jones Plant is not responsible for approving the interim contracts, conducting the EA, issuing the FONSI, or failing to conduct the EIS, which are the core issues of the dispute. And by this action Plaintiffs are not seeking to shut down the Jones Plant. Rather, this action is about whether Defendants have discretion to modify or disprove the interim contracts and, if so, whether they need to conduct their environmental review anew. Plaintiffs also emphasize, however, that water is taken, in part, from the Northern District, which harms the fish and wildlife in the Northern District and therefore there is local interest in this lawsuit in the Northern District.

In sum, the Court finds that the Eastern District has a greater localized interest in this dispute than does the Northern District, but not so much that it would warrant upsetting the Plaintiffs' choice of forum. This case does not involve improper forum shopping where there is no meaningful connection to the District.

The Court finds instead that the familiarity of each forum with the facts and law relevant to this lawsuit favors transfer to the Eastern District. The Eastern District has a long history of adjudicating cases involving the CVP and the CVPIA. See Dkt. No. 4 at 8-9 (citing numerous cases involving the CVP, CVPIA and Westlands Water District). In doing so the Eastern District has interpreted other contracts and laws that are related to the subject of this action, and also addressed the impact of the contracts on fish and wildlife. See, e.g., Natural

1  Res. Def. Council v. Kempthorne, No. 05-01207, 2008 WL 5054115 (E.D. Cal. Nov. 19,
2  2008), superseded in part, 621 F. Supp. 2d 954 (E.D. Cal. 2009), decision clarified,  627 F.
3  Supp. 2d 1212 (E.D. Cal. 2009, on reconsideration, No. 05-1207, 2009 WL 2424569 (E.D.
4  Cal. Aug. 6, 2009), and decision clarified, 627 F. Supp. 2d 1212 (E.D. Cal. 2009, on
5  reconsideration, No. 05-1207, 2009 WL 2424569 (E.D. Cal. Aug. 6, 2009).

6        Plaintiffs respond that the Northern District is equally capable of applying federal law
7  and that this factor carries little weight.  They also highlight that District Court Judge Oliver
8  W. Wanger decided many of the district court cases cited by Defendants and has since retired.
9  While Judge Wanger's retirement is a consideration,  District Court Judge O'Neill has taken
10  over a number of Judge Wanger's cases, including The Consolidated Delta Smelt Cases, No.
11  09-00407, Dkt. No. 1062 and San Luis & Delta-Mendota Water Authority v. Locke, No. 09-
12  01053, Dkt. No. 644.  (Dkt No. 10 at 11 n. 9.)  Given his work on these cases in the past two
13  years, Judge O'Neill is more familiar with the general factual background of this case, and the
14  claims in this case are closely linked to the lengthy history of Bay-Delta litigation in the
15  Eastern District.  The judicial goals of consistency and efficiency would therefore be served
16  by a transfer to the Eastern District.  See Gonzales v. F/V DANIELA, 2012 WL 2375086 *4
17  (S.D. Cal. June 22, 2012) (a court may consider "the promotion of judicial efficiency and
18  economy in determining whether to transfer an action").

## CONCLUSION

20      In an administrative review environmental case such as this, "the issue of which federal
21  district should adjudicate the issues is generally determined by weighing a plaintiff's choice of
22  forum against the competing interest in having localized controversies decided at home." Ctr.
23  for Biological Diversity & Pac. Env't, 2007 WL 2023515 at *5 (internal quotation marks and
24  citation omitted).  Here, while there is likely greater localized interest in the Eastern District
25  given the importance of water to the Central Valley economy, there is certainly some
26  localized interest in the Northern District as well.  Nonetheless, in light of the long history of
27  litigation involving the CVP and CVPIA in the Eastern District, and the Eastern District's
28  familiarity with the background facts, contracts, and the relevant law, the Court finds that

Defendants have met their burden of showing that a 1404(a) transfer is warranted.  A transfer will efficiently utilize judicial resources, promote consistency and will likely lead to speedier adjudication given the Eastern District's familiarity with the CVP and CVPIA.

Accordingly, this action is TRANSFERRED to the Eastern District of California. This Order disposes of Docket No. 4.

**IT IS SO ORDERED.**

Dated: Aug. 6, 2012

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE